**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 12, 2025

S25G0016.  P&J BEVERAGE CORPORATION v. THE BOTTLE SHOP, LLC.

WARREN, Presiding Justice.

Under Georgia law, "[a]ny person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification." OCGA § 51-7-81.[1]  A person who is injured by abusive litigation may file a lawsuit against the person who has engaged in that abusive litigation.  But before such a suit can be filed, certain statutory prerequisites must be met.  In particular, OCGA § 51-7-84 (a) requires that "[a]s a condition precedent to any claim for abusive

---

[1] Under OCGA § 51-7-80 (6), "Person" is defined as "an individual, corporation, company, association, firm, partnership, society, joint-stock company, or any other entity, including any governmental entity or unincorporated association of persons with capacity to sue or be sued."

litigation, the person injured" must send notice "to any person against whom such injured person intends to assert a claim for abusive litigation." That notice has several requirements, including that it "shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation." OCGA § 51-7-84 (a). A plaintiff who provides this notice and prevails in an abusive litigation claim "shall be entitled to all damages allowed by law as proven by the evidence, including costs and expenses of litigation and reasonable attorney's fees." OCGA § 51-7-83 (a).

We hold that under the plain terms of OCGA § 51-7-84 (a), the notice must identify a civil proceeding and indicate that the party sending the notice contends that the proceeding it identifies was abusive litigation. As explained more below, The Bottle Shop—which filed a suit for abusive litigation against P&J Beverage Corporation ("P&J") and was awarded damages for abusive litigation by a jury—did not satisfy this condition. Although The Bottle Shop sent P&J an email that indicated a plan to file a claim

2

for wrongful injunction based on the injunction P&J secured to prevent The Bottle Shop from operating its store and asked P&J to consent to a stay of the injunction pending appeal, the email did not constitute the notice required by OCGA § 51-7-84 (a) because it failed to "identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position" The Bottle Shop "claim[ed] constitutes abusive litigation." Id. And because we cannot determine which portion of the damages awarded by the jury is attributable to The Bottle Shop's abusive litigation claim and which portion is attributable to its wrongful injunction claim, we vacate the trial court's order and remand for proceedings consistent with this opinion.

1. (a) As explained by the Court of Appeals, the history of this case is as follows:

> In [2016], P&J Beverage Corporation filed a lawsuit against the City of Columbus "seeking a writ of mandamus to prevent Columbus from issuing an alcoholic beverage license to The Bottle Shop, LLC, and then seeking to revoke the license once issued." P&J sought the writ of mandamus, arguing that The Bottle Shop's proposed location was within 600 feet of The Growing

3

Room, a for-profit daycare facility, which P&J argued was a "school." Therefore, P&J claimed that the proposed location for The Bottle Shop would violate a provision of Columbus's city ordinances which prohibited the issuances of liquor licenses to establishments within 600 feet of a school.

After all of the parties, including The Bottle Shop, which had intervened in the action, filed motions for summary judgment, the trial court granted P&J's motion, ordering that Columbus declare The Bottle Shop's license "improperly issued, and . . . treated as invalid from the outset, and shall not grant authority to any person to operate any business using said license."

*P&J Beverage Corp. v. Bottle Shop, LLC*, 372 Ga. App. 461, 461 (904 SE2d 125) (2024) (citations omitted).

After the trial court signed the order granting P&J summary judgment, The Bottle Shop's attorney sent P&J's attorney an email indicating that The Bottle Shop planned to appeal and asking P&J to consent to a stay of the injunction preventing The Bottle Shop from operating with its alcoholic beverage license while the appeal was pending. In relevant part, the email said:

INADMISSIBLE SETTLEMENT COMMUNICATION

. . .

4

What we wanted to discuss was whether P&J will agree to a stay of the relief against The Bottle Shop and the City/Angelica Alexander pending the ruling of the appellate court. I did some research on the issue and a party applying for an injunction or restraining order "does so at its own peril because if it succeeds in obtaining a restraint that is later determined to have been wrongful, then the wrongfully restrained party may recover actual damages caused by that restraint from the applicant." *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28, 32, 706 SE2d 660, 665 (2011).

If the Defendants win on appeal but the Bottle Shop shut down in the interim, The Bottle Shop will assert a damages claim against P&J for wrongful injunction for the time that The Bottle Shop is shut down. P&J can keep that from being an issue by consenting to a stay of the Court's Order and waiting on the Appellate ruling. Of course, if you don't consent (which you of course have the right to do) we intend to seek a Stay from Judge Culpepper and, if not successful from the Appellate Court.

[Co-counsel] and/or I are available to discuss this with you further if you would like. I'm hopeful we can avoid having to have a hearing on this issue and reach an agreement.

P&J declined to consent to the stay. The Bottle Shop then filed a motion to stay in the trial court, which was denied. The Bottle Shop filed a notice of appeal of the trial court's grant of summary judgment to P&J and filed an emergency motion in the Court of

5

Appeals asking for supersedeas pending appeal, to allow its store to remain open during the appeal. The Court of Appeals granted the supersedeas. As to the substantive appeal, the Court of Appeals held that the trial court erred by granting injunctive relief and reversed the trial court. See *Consol. Govt of Columbus, Georgia v. P&J Beverage Corp.*, 344 Ga. App. 482, 487 (2018) (concluding that P&J's argument that the daycare near The Bottle Shop was a "school" was "unpersuasive" and holding: "P&J has failed to show that Columbus violated any clear legal duty by exercising its statutorily-granted discretion to both determine that The Bottle Shop should be granted an alcohol license, and to decline to revoke it").

(b) The Bottle Shop then filed a lawsuit against P&J, alleging abusive litigation and wrongful injunction, and seeking compensatory damages, attorney fees, and punitive damages. At trial, evidence was presented that because the trial court denied its motion to stay the injunction pending appeal, The Bottle Shop was closed for eight days, until the Court of Appeals granted its motion

6

for supersedeas. The Bottle Shop's bookkeeper testified that during this time, The Bottle Shop lost $19,960.12 in revenue and had to pay $10,978.06 in overhead costs. She further testified that The Bottle Shop spent $144,533.33 in attorney fees and litigation expenses to defend the injunction case. Based on this evidence, The Bottle Shop asked for $175,471.51—the total of the three amounts—as compensatory damages for abusive litigation and wrongful injunction.[2] The Bottle Shop also argued that it was entitled to attorney fees under OCGA § 13-6-11[3] and presented evidence that the Bottle Shop's attorneys had charged a total amount of $98,050

---

[2] As the basis for the abusive litigation damages, The Bottle Shop relied on OCGA § 51-7-83 (a), which, as discussed above, provides that "[a] plaintiff who prevails in an action under this article shall be entitled to all damages allowed by law as proven by the evidence, including costs and expenses of litigation and reasonable attorney's fees." As to the wrongful injunction damages, The Bottle Shop relied on case law from the Court of Appeals stating that if "a restraint . . . is later determined to have been wrongful, then the wrongfully restrained party may recover actual damages caused by that restraint from the applicant." *Bates v. Howell*, 352 Ga. App. 733, 741 (835 SE2d 814) (2019) (citation and punctuation omitted).

[3] OCGA § 13-6-11 says: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

in fees for the abusive litigation lawsuit. The Bottle Shop further argued that it was entitled to punitive damages.

The jury found in favor of The Bottle Shop, awarding $175,471.51 for "actual damages," $98,050 for attorney fees and expenses of litigation, and $300,000 for punitive damages.[4] The "Order and Final Judgment" issued by the trial court ordered that The Bottle Shop "shall have judgment against [P&J] in the amount of $175,451.51 in compensatory damages, $250,000 in punitive damages, and $98,050 in attorneys' fees."[5]

After The Bottle Shop rested its case at trial and again at the

[4] The blank for the verdict form filled in by the jury with $175,471.51 described the award as "actual damages suffered resulting from wrongful injunction" and the blank for attorney fees described that award as "attorney's fees and expenses of litigation resulting from wrongful injunction." There was no blank for the jury to fill in with damages specifically for "abusive litigation." During the trial, The Bottle Shop's attorney argued that the damages for the abusive litigation claim and the wrongful injunction claim were the same and told the jury it could "award those damages under either of the theories."

[5] Unlike the verdict form discussed in footnote 4 above, the trial court's final order did not expressly link the "compensatory damages" and "attorneys' fees" to wrongful injunction, abusive litigation, or both, instead categorizing the awards as only "compensatory damages" and "attorneys' fees." The final order also capped the punitive damages at $250,000 pursuant to OCGA § 51-12-5.1 and decreased the "actual" or "compensatory" damages by $20. Neither party addresses the $20 discrepancy, and, particularly in light of our vacatur of the trial court's judgment, we do not further address it.

close of all the evidence, P&J moved for directed verdict on a number of grounds, including based on the "lack of statutory notice" required by OCGA § 51-7-84 (a) for the abusive litigation claim. P&J later raised this argument again in a motion for judgment notwithstanding the verdict. The trial court denied all of these motions, and P&J appealed.

(c) The Court of Appeals held that the email quoted above met the requirements of OCGA § 51-7-84 (a) because the email was "written notice" that "gave P&J the opportunity to consent to a stay of the injunction and informed P&J that if it failed to do so, The Bottle Shop would seek damages." *P&J Beverage Corp.*, 372 Ga. App. at 464 (citation omitted). Presiding Judge McFadden dissented, concluding that the email did not satisfy the requirement of OCGA § 51-7-84 (a) because the email only "informed P&J that The Bottle Shop was contemplating a wrongful injunction claim." Id. at 472 (citation and punctuation omitted). P&J petitioned for certiorari, and we granted the petition to address whether the email satisfied

9

the notice requirement of OCGA § 51-7-84 (a).[6]

2.  The notice at issue in this case is required by OCGA § 51-7-84 (a), which says:

> As a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation.

When determining the meaning of a statute, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-173 (751 SE2d 337) (2013) (citations and

---

[6] The case was orally argued on May 13, 2025.

punctuation omitted). See also *State v. Wierson*, S24G1299, 2025 WL 1507392, at *4 (Ga. May 28, 2025) (considering the "plain language" of the statutory text). And words "must be read in the context of the regulation as a whole." *City of Guyton v. Barrow*, 305 Ga. 799, 805 (828 SE2d 366) (2019) (citation and punctuation omitted) (citation and punctuation omitted).

To begin, we observe that OCGA § 51-7-84 (a), which is part of the title in Georgia's Code dealing with the claim of abusive litigation, see OCGA § 51-7-80 et seq., plainly requires that a notice be sent as "a condition precedent to any claim for abusive litigation" and establishes several requirements for that notice. Those requirements include that the notice be "written"; that the notice be sent by "registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee"; that the notice be sent to "any person against whom such injured person intends to assert a claim for abusive litigation"; and that the notice "give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon,

11

discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position." Another requirement—the requirement found in the last sentence of the provision and the requirement we focus on today—mandates that the notice "shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation."[7] That requirement was not met here.

We reach this conclusion by examining the statute as a whole. OCGA § 51-7-84 (a) requires giving a specific notice to the person who has engaged in a "civil proceeding . . . or other position" that is allegedly abusive litigation and also giving that person an opportunity to withdraw from that proceeding. The utility of this notice depends on not simply communicating to the notice recipient that the recipient has engaged in a civil proceeding of some kind

---

[7] We need not examine all of the requirements established by OCGA § 51-7-84 (a) and whether The Bottle Shop's email satisfied them because, as discussed below, the email failed to "identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation," which means the condition precedent mandated by OCGA § 51-7-84 (a) of sending a notice meeting the statutory requirements was not met.

(especially because the notice recipient presumably would be aware of any civil proceedings they are engaged in) but also alerting the notice recipient that the person sending the notice contends that this civil proceeding constitutes abusive litigation.  Given the statutory provision "as a whole" and the plain language of the final sentence of OCGA § 51-7-84 (a), see *City of Guyton*, 305 Ga. at 805, the "most natural and reasonable way" of reading this sentence, see *Deal*, 294 Ga. at 172, is that it requires the "injured person" sending the notice to (1) identify in the notice a specific "civil proceeding, . . . or other position" and also (2) indicate the injured person's contention that this identified proceeding "constitutes abusive litigation."[8]  See *Hall County Bd. of Tax Assessors v. Westrec Properties, Inc.*, 303 Ga. 69, 75 (809 SE2d 780) (2018) ("The word shall is generally construed as a word of command.  The import of the language is mandatory.") (citation and punctuation omitted).[9]

---

[8] In affirming the trial court, the Court of Appeals did not expressly address this requirement of OCGA § 51-7-84 (a).

[9] "This Court has recognized that, though 'shall' generally indicates a

13

3. The Bottle Shop's email did not fulfill the condition precedent set forth in OCGA § 51-7-84 (a) requiring a written notice to "identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation."[10] To be sure, it did identify a "civil proceeding": the injunction P&J sought and secured against The Bottle Shop's operation of its store.[11] But The Bottle Shop failed to meet the second part of this requirement: it failed to claim that the civil proceeding "constitute[d] abusive litigation." That is because The Bottle Shop indicated only its contention that P&J's civil

---

mandatory directive, it can be permissive depending on the context in which it appears." *State v. Islam*, 321 Ga. 30, 32 n.2 (912 SE2d 632) (2025). Here, "we discern no contextual basis for concluding that the word "shall," . . . does not function as a mandatory directive." Id. (citation and punctuation omitted).

[10] There is no allegation that The Bottle Shop sent P&J anything else that could be construed as the notice required by OCGA § 51-7-84 (a).

[11] There is no dispute that pursuing an injunction as P&J did here could constitute a "civil proceeding, claim, defense, motion, appeal, civil process, or other position" as used in OCGA § 51-7-84 (a). We need not decide which term from that list is the best one to describe the injunction in these circumstances, but we use "civil proceeding" to describe the injunction in the opinion for the sake of convenience. We also note that no party contends that the email should be read to indicate that if P&J refused to consent to a stay, that refusal itself would be an "other position" that could constitute abusive litigation.

14

proceeding constituted a *wrongful injunction*—not that it constituted abusive litigation. And, as explained more below, indicating that a civil proceeding was a wrongful injunction does not indicate that it was abusive litigation.

(a) The focus of the Bottle Shop's email was its assertion that the injunction P&J procured against it was a wrongful injunction. The first paragraph of the email quoted above discussed the research The Bottle Shop's attorney had done, and in doing so quoted and cited a case discussing a wrongful injunction. See *Cox*, 308 Ga. App. at 32. The next paragraph of the email offered P&J the opportunity to consent to a stay of the injunction; stated that if the injunction against The Bottle Shop was not stayed and The Bottle Shop won on appeal, "The Bottle Shop will assert a damages claim against P&J for wrongful injunction"; and explained, "P&J can keep that [i.e., the damages claim for wrongful injunction] from being an issue by consenting to a stay of the Court's Order."

(b) A claim for wrongful injunction is distinct from a claim for abusive litigation and, unlike a claim for abusive litigation, does not

15

require a showing of intent. Our Court of Appeals has defined wrongful injunction in this way:

> A party has been wrongfully enjoined . . . if it is ultimately found that the enjoined party had at all times the right to do the enjoined act. The focus of the wrongfulness inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance. To recover damages based on a wrongful restraint, a party must prove that it was wrongfully enjoined and that its damages were proximately caused by the erroneously issued injunction.

*Bates v. Howell,* 352 Ga. App. 733, 741-742 (835 SE2d 814) (2019) (citations and punctuation omitted). See also *Cox,* 308 Ga. App. at 32 ("A party applying for an injunction or restraining order does so at its own peril because if it succeeds in obtaining a restraint that is later determined to have been wrongful, then the wrongfully restrained party may recover actual damages caused by that restraint from the applicant.") (citation and punctuation omitted).

By contrast, Georgia statutory law defines "abusive litigation" in this way:

> Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person

16

acts:
(1) With malice; and
(2) Without substantial justification.

OCGA § 51-7-81.

Nothing about an assertion that a party has wrongfully secured an injunction against another party indicates that the party who sought the injunction acted "with malice" and "without substantial justification," such that it constitutes abusive litigation. See OCGA § 51-7-81 (1) & (2).[12] That is so because all that is

---

[12] OCGA § 51-7-80 provides further definitions of the terms used in OCGA § 51-7-81 (1) and (2) to define "abusive litigation." OCGA § 51-7-80 (5) defines "malice" as

> acting with ill will or for a wrongful purpose and may be inferred in an action if the party initiated, continued, or procured civil proceedings or process in a harassing manner or used process for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.

"Wrongful purpose" is further defined in OCGA § 51-7-80 (8) as

> result[ing] in or ha[ving] the effect of:
> (A) Attempting to unjustifiably harass or intimidate another party or witness to the proceeding; or
> (B) Attempting to unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on its merits.

And OCGA § 51-7-80 (7) defines "without substantial justification" as meaning that a "civil proceeding, claim, defense, motion, appeal, or other position is: (A) Frivolous; (B) Groundless in fact or in law; or (C) Vexatious." None of these terms defining "abusive litigation" overlaps with the requirements for a "wrongful injunction."

17

required for an injunction to be "wrongful" under these circumstances is that "after a full hearing," it is determined that "the injunction should not have issued." *Bates*, 352 Ga. App. at 742. In fact, The Bottle Shop emphasized this difference between the two types of claims at trial, telling the jury in closing argument that The Bottle Shop's claim for wrongful injunction "does not require malice, does not require a lack of justification," and explaining that The Bottle Shop had presented two theories of recovery in that case: "one that requires no showing of any malice" and "one that requires a showing of malice."

(c) Because the only civil proceeding that The Bottle Shop identified in the email was the injunction—which The Bottle Shop characterized as a wrongful injunction—and its description of that proceeding indicated only that The Bottle Shop expected that the injunction would be reversed on appeal, we see no indication that The Bottle Shop contended that the injunction proceeding also constituted abusive litigation. And we see nothing else in the email, such as an allegation of, or even reference to, "malice" or action

18

without "substantial justification," see OCGA § 51-7-81 (1) & (2), that could be construed as The Bottle Shop identifying a "civil proceeding . . . or other position" it claimed constituted abusive litigation under OCGA § 51-7-81.

Regarding what words or phrases must be used in a notice to meet the requirements set forth in OCGA § 51-7-84 (a), we acknowledge that the statutory provision does not expressly require that the notice use the phrase "abusive litigation." We nonetheless conclude that the statute means what it says when it requires that a party identify a "civil proceeding . . . or other position which the injured person claims constitutes *abusive litigation*." Id. (emphasis added). See also *Deal*, 294 Ga. at 172 ("When we consider the meaning of a statute, 'we must presume that the General Assembly meant what it said and said what it meant.'") (citation omitted). It may be that a person can identify the civil proceeding it believes is abusive litigation by using words or phrases other than "abusive litigation," such as by describing the civil proceeding as malicious or "without substantial justification," see OCGA § 51-7-81 (1) and (2),

19

done with "ill will," OCGA § 51-7-80 (5), "[a]ttempting to unjustifiably accomplish some ulterior or collateral purpose," OCGA § 51-7-80 (8) (b), or as one of the other phrases referenced above in footnote 12 that defines "abusive litigation," see OCGA § 51-7-81 (1) and (2), "wrongful purpose," see OCGA § 51-7-80 (5), or "without substantial justification," see OCGA § 51-7-80 (7).[13] But we do not need to decide all of the words or phrases that would or would not satisfy the requirements of OCGA § 51-7-84 (a) to conclude that the statute was not met by a notice that referenced only wrongful injunction, cited a case only about wrongful injunction, and provided no other indication that The Bottle Shop viewed P&J's actions as constituting abusive litigation.

We therefore conclude that The Bottle Shop's identification of the injunction proceeding as resulting in a wrongful injunction did not fulfill the requirement in OCGA § 51-7-84 (a) that the party

---

[13] We are doubtful that formal citation to the abusive litigation statutes, OCGA § 51-7-80 et seq., is required to fulfill the condition precedent set forth in OCGA § 51-7-84 (a), although such a citation could help identify a proceeding as abusive litigation.

20

sending the notice identify a "civil proceeding" the party "claims constitutes abusive litigation."[14] Thus, the email did not satisfy the statutory requirements to serve as the notice under OCGA § 51-7-84 (a); The Bottle Shop therefore failed to provide such notice; and The Bottle Shop cannot recover damages on its claim of abusive litigation.

Because The Bottle Shop did not satisfy the condition precedent imposed by OCGA § 51-7-84 (a), the trial court erred when it denied P&J's motions for a directed verdict and for judgment notwithstanding the verdict as to the abusive litigation claim on this ground, and the Court of Appeals erred by affirming the trial court.[15]

---

[14] Our holding should not be read to imply that a wrongful injunction could never also constitute abusive litigation. Our conclusion is only that indicating that an injunction was a wrongful injunction does not indicate a contention that it was abusive litigation.

[15] It appears that the Court of Appeals's misstep was focusing solely on whether the email gave P&J the "opportunity to voluntarily withdraw" its claim, which the court—relying on case law rather than the text of the statute—characterized as "the stated purpose" of OCGA § 51-7-84 (a). *P&J Beverage Corp.*, 372 Ga. App. at 463. As explained above, however, this requirement is not the sole requirement contained in OCGA § 51-7-84 (a). Instead, the statute imposes several requirements that must be met in order for a notice to satisfy OCGA § 51-7-84 (a).

4. We cannot, however, determine from the trial proceedings, the verdict form, and the trial court's final order (described in Division 1 above) what portion of the awards given to The Bottle Shop was based on its claim of abusive litigation rather than wrongful injunction.[16] We therefore vacate the judgment of the trial court and remand the case to the trial court to determine what portion of the awards, if any, is still valid, and to determine whether a retrial is necessary, in light of our holding that The Bottle Shop was not entitled to any damages based on abusive litigation. See, e.g., *Lyman v. Cellchem Intl, LLC*, 342 Ga. App. 446, 447 (803 SE2d 375) (2017) (remanding the case "to the trial court for a new trial on the issue of punitive damages" because it was "unclear, given the general verdict form, whether the jury based its punitive damages award in any part on the now-defunct tortious interference claim, or on the surviving breach of fiduciary duty verdict, or both") (footnote

---

[16] This opinion leaves untouched any award based on The Bottle Shop's wrongful injunction claim. Although P&J argued in the trial court that a claim for wrongful injunction was not appropriate under the circumstances of the case, that issue was not raised by P&J's petition for certiorari or our grant of that petition. Thus, the issue is not before us.

22

omitted).

*Judgment vacated and case remanded. All the Justices concur, except McMillian, J., disqualified, and Land, J., not participating.*